## THE TENNASSERIM.

### SWEETING et al. v. THE TENNASSERIM AND CARGO.

(*District Court, S. D. Florida.* July 27, 1891.)

SALVAGE—CONTRACT FOR COMPENSATION.
    A contract made by the wreckers with a master while his vessel was aground on the Florida reef, *held* not to be binding.
    (*Syllabus by the Court.*)

In Admiralty.

The ship Tennasserim, laden with sugar, from Havana, bound for New York, went ashore on a portion of the Florida reef known as "Molasses" or "Little French Reef," the morning of the 19th August, 1891. The libelants, a portion of whom were licensed wreckers of the district, with several schooners, assisted by a large number of men from the shore, in small boats, offered their assistance. After some bargaining, the master accepted their services, and entered into a written contract to pay them $10,000 for getting his vessel afloat. This contract was attached to the

libel, and relied upon by the libelants in the suit. The ship was lying upon a hard, rocky ridge, extending obliquely under her from the starboard quarter nearly to the port bow, upon which there was but 12 feet of water. She drew 14½ feet before going aground. The wind was light, but there was quite a swell, the wind and sea being from the S. E., while the ship headed N. by E. The salvors carried out a large anchor with a steel cable, and, as the tide rose, hove heavy strains, but the cable parted, and they carried out a six-inch hawser, and hove again, but this also parted, and they then carried out a ten-inch hawser, and made it fast to the heavy anchor, and continued heaving until the tide commenced to fall. They had been discharging cargo into one of their schooners, and continued until they had taken out four schooner loads,—about 70 tons,—when, the tide rising again, by repeated heaving they got the vessel afloat. They were employed about 20 hours in the service. In all there were about 150 men engaged, very nearly one-half of whom were attached to licensed wrecking vessels; the others were farmers and laborers from the shore.

*Jeff. B. Browne*, for libelants.

*G. Bowne Patterson*, for respondent.

LOCKE, J., *(after stating the facts as above.)* The service rendered in this case was undoubtedly one of salvage, although not of extraordinary merit. The vessel was in peril, and the master powerless to extricate her. Drawing 14½ feet of water before going ashore, she was lying on a ridge where there was but 12 feet, with the wind and sea from a direction that, as fast as the tide rose, would tend to push her further ashore. The bottom was uneven and rocky, and the reef known as one of the most dangerous on the coast; but the weather was fine, and the wind light, and the vessel went ashore at nearly low water, so that with the aid of the anchor she was the more easily floated as she was lifted by the swell and the rising tide. The contract which was made between the master and the salvors can have no binding force upon the owners, as, although probably no especial force or influence was brought to bear upon the master, yet the position in which the property in his charge was placed, and the necessity of immediate action compelling the contract, is recognized in admiralty law. It certainly cannot be said that no advantage was taken of the master on account of the position in which his vessel was placed, as that position was the very foundation of the contract. It was not a voluntary contract on his part. He first offered five thousand dollars; the salvors asked fifteen thousand; he then offered seven thousand; they came down to twelve thousand; he offered eight thousand; they demanded ten thousand, and refused to recede from this amount, or to take a cent less. If from any mistaken idea in regard to the delays or expenses of the court he desired to make a bargain, rather than to submit to a judicial decision, he was nevertheless, from the surrounding circumstances, forced to make one that his unbiased judgment would not have approved had it not been for the position in which he was placed. It was out of his power to obtain assistance in any other way

There were no competing bidders for the work, and he was compelled to make the best bargain he could, no matter how inequitable it might be. Therefore the amount agreed to by the master cannot be accepted as the measure of the value of the services rendered, although the making of the contract may be considered as evidence of the great need of aid, and the master's opinion of the immediate necessity of it.

The service was rendered with as fair success as the nature of the appliances at command would permit. No one could have foreseen the parting of the steel cable, or anticipated the breaking of the hawser. At the hearing I first thought that an error had been committed in carrying out the smaller hawser instead of the larger one, after the parting of the steel cable; but upon hearing the explanation that the smaller one was new and the larger one old and worn, I was satisfied that if there was an error in judgment it was not a willful or negligent one, but based upon a presumption that might well be supposed to be true. It was the judgment of the master as well as of the salvors, and very fortunately resulted in no damage or injury, although it probably necessitated more labor on the part of the libelants. The unnecessarily large number of men which were permitted to aid in the work, and which the master wrecker says he took in because "he did not know but what he should stand in need of them," cannot increase in the slightest the salvage beyond the ordinary rates, or justify one larger than would have been given had there only been men enough to perform the service. When those who hold licenses, and are to a certain extent looked upon as being dependent upon and entitled to liberal salvage in wrecking, accept the aid of others from shore not so recognized, they must share their earnings with them without any increase. It is not the desire to make wrecking so remunerative upon this coast that others than those engaged shall flock to it whenever an opportunity offers.

There has been no appraisement of the property, but all information and evidence regarding its value has been received, and it is considered that for the purpose of salvage an approximate value of $25,000 for the vessel and $50,000 for the cargo is sufficiently near for determining an award. The property has been relieved and restored to those interested in an undamaged condition, and the vessel is ready to proceed on her voyage, and they can afford to pay a fairly liberal salvage. I consider that $7,875 will be ample compensation for the salvors, and not unreasonably burdensome upon the property, and the decree will follow that, upon payment of said amount, together with the costs, charges, and expenses to be taxed and allowed, the property be restored to the claimant